**The Cardoza Law Corporation**
Michael F. Cardoza, Esq. (SBN: 194065)
Mike.Cardoza@cardozalawcorp.com
Lauren B. Veggian, Esq. (SBN: 309929)
Lauren.Veggian@cardozalawcorp.com
548 Market St. #80594
San Francisco, CA 94104
Telephone: (415) 488-8041
Facsimile: (415) 651-9700
*Attorneys for Plaintiff*,
Benjamin Yu

# UNITED STATES DISTRICT COURT
## FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BENJAMIN YU**<br><br>Plaintiff,<br><br>v.<br><br>**NEWPORT EMERGENCY MEDICAL GROUP, INC. and CMRE FINANCIAL SERVICES, INC.;**<br><br>Defendants | Case No.: _____<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

///

///

///

///

**COMPLAINT FOR DAMAGES**

## INTRODUCTION

1. This is a case about a disabled military veteran who is being threatened and harassed by a group of doctors and their debt collector for money he doesn't even owe. The veteran and his daughter were both covered by Veteran's Administration (VA) medical insurance which paid the doctors on time and in full for two emergency room visits. Despite it being illegal under federal law to try to charge a veteran for more money than they receive from the VA, the doctors' group went ahead and tried to get even more money directly from this disabled veteran and then, when that failed, hired a debt collector to try to get it from him. Thinking that there had maybe been some honest mistake, the veteran tried to clear up the situation and even got the VA to write letters directly to the doctors' group. Even then, and still to this day, this doctors' group and their debt collectors, despite being told that what they are trying to do is wrong, keep harassing and threatening the disabled military veteran for money they aren't entitled to.

2. **BENJAMIN YU** ("Plaintiff"), by Plaintiff's attorney, brings this action for actual damages, statutory damages, punitive damages, and attorneys' fees, and costs, against **NEWPORT EMERGENCY MEDICAL GROUP, INC. and CMRE FINANCIAL SERVICES, INC.** for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), and the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 et seq. (hereinafter "RFDCPA"), both of which prohibit debt collectors from

engaging in abusive, deceptive and unfair practices.

3. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to the Plaintiff, or to the Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

5. All violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

6. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, principles, managing agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of those Defendants named.

## JURISDICTION AND VENUE

7. Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy," 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States, and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

8. This action arises out of Defendants' violations Fair Debt Collection Practices

Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), and the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 et seq. (hereinafter "RFDCPA").

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## FDCPA AND RFDCPA

10. In enacting the FDCPA, Congress found that:

    a. There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

    b. Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

    c. Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

    d. Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

    e. It is the purpose of this title to eliminate abusive debt collection practice by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect Consumers against debt collection abuses. 15 U.S.C. § 1692.

11. Similarly, when enacting the RFDCPA, the California Legislature found that:

    The banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts. Unfair or deceptive collection practices undermine the public confidence

which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. Cal. Civil Code § 1788.1(a)(1).

12. The FDCPA and the RFDCPA are both strict liability statutes. That is, a plaintiff need not prove intent or knowledge on the part of the debt collector to establish liability. *See Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060-61 (9th Cir. 2011); *Donohue v. Quick Collect*, 592 F.3d 1027, 1030 ("[t]he FDCPA is a strict liability statute that makes debt collectors liable for violations that are not knowing or intentional").

13. To further protect consumers, claims under the FDCPA and RFDCPA are to be judged according to the "least sophisticated debtor" or "least sophisticated consumer" standard. *Gonzales* at 1061. This standard is lower than the "reasonable debtor" standard, and is specifically designed to protect consumers of below average and sophistication or intelligence. *Id.* In addition, a plaintiff need not even have actually been misled or deceived by the debt collector's communication. Rather, liability depends on whether the *hypothetical* least sophisticated debtor – someone who is uninformed and naïve – would have likely been misled. *Id.*; *see also Tourgeman v. Collins Financial Servs.*, 755 F.3d 1109, 1119 (9th Cir. 2014).

## PARTIES

14. Plaintiff is a natural person who resides in the County of Orange, State of California. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. §

1692a(3) and "Debtor" as that term is defined by California Civil Code § 1788.2(h). Plaintiff is a "disabled person" as that term is defined in subdivisions (f) and (g) of Cal. Civ. Code § 1761.

15. Defendant Newport Emergency Medical Group, Inc. (hereinafter "Defendant NEMG") is a California corporation operating from an address of 23 Watercress, Irvine, CA 92603, and is a "Debt Collector" as that term is defined by Cal. Civ. Code § 1788.2(c) because it regularly and in the ordinary course of business, engages in debt collection on behalf of itself. It is the original creditor of the ER debt at issue.

16. Defendant CMRE Financial Services, Inc. (hereinafter "Defendant CMRE") is a California corporation operating from an address of 3075 E Imperial Hwy, #200, Brea, CA 92821, and is a "Debt Collector" as that term is defined by 15 U.S.C. § 1692a(6) and Cal. Civ. Code § 1788.2(c) because it regularly uses the mails and/or the telephone to collect, or attempt to collect, directly or indirectly, defaulted consumer debts that it did not originate. It operates a nationwide debt collection business and attempts to collect debts from consumers in virtually every state, including consumers in the State of California. Its principal, if not sole, business purpose is the collection of defaulted consumer debts originated by others, and, in fact was acting as a debt collector as to the delinquent consumer debt it attempted to collect from Plaintiff.

17. This case involves money due or owing or alleged to be due or owing from a

natural person by reason of a consumer credit transaction. As such, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

18. Plaintiff is informed and believes, and thereon allege that at all times herein mentioned Named Defendants were agents, officers, directors, managing agents, employee and/or joint venturer of each of their co-defendants and, in doing the things hereafter mentioned, each was acting in the scope of his authority as such agent, officer, director, managing agent, employee, and/or joint venturer, and with the permission, knowledge, ratification, and consent of their co-defendants, and each of them. Any reference hereafter to "Defendants" without further qualification is meant by Plaintiff to refer to each Defendant, and all of them, named above.

## FACTUAL ALLEGATIONS

19. Plaintiff is an individual residing in the County of Orange in the State of California.

20. Plaintiff is informed and believes, and thereon alleges, that at all times relevant, Defendants conducted and continue to conduct business in the State of California.

21. Defendant CMRE's business consists primarily, if not solely, of the acquisition and collection of delinquent consumer debts.

22. Defendant NEMG's business consists partially of the collection of debts which it

originates, on behalf of itself.

23. Plaintiff, as a 100% total and permanent service-connected disabled military veteran, is fully covered by his insurance through the Department of Veteran's Affairs ("VA") to receive emergency care outside of the VA healthcare system.

24. Plaintiff's daughter also has full coverage to receive emergency care outside of the VA healthcare system under her insurance policy – called the Civilian Health and Medical Program of the Department of Veteran's Affairs ("CHAMPVA").

25. On February 20, 2018, Plaintiff visited HOAG Hospital's emergency room – where Defendant NEMG serves as a service provider – for a medical issue.

26. On April 12, 2018, Plaintiff's VA insurance paid the claim that Defendant NEMG submitted for Plaintiff's emergency room visit.

27. On May 5, 2018, Plaintiff's daughter visited HOAG Hospital's emergency room – where Defendant NEMG serves as a service provider –for a medical issue.

28. On June 18, 2018 and June 21, 2018, Plaintiff's daughter's insurance – CHAMPVA – paid the claims that Defendant NEMG submitted for Plaintiff's daughter's emergency room visit.

29. Pursuant to C.F.R. Title 38, part 17, paragraph 17.56(d), a medical facility cannot bill a veteran or any third party for any balance not paid to the medical facility by the VA.

30. In or around July 2018, Plaintiff received a bill from Defendant NEMG regarding Plaintiff's February 2018 ER visit and Plaintiff's daughter's May 2018 ER visit.

31. The July 2018 bill was the first written communication Plaintiff received from Defendant NEMG at Plaintiff's address (which is in California) and it did not include the notice required by Cal. Civ. Code §1812.700.

32. In or around August 2018, Plaintiff received a bill from Defendant NEMG regarding Plaintiff's February 2018 ER visit and Plaintiff's daughter's May 2018 ER visit.

33. After receipt of the bills from Defendant NEMG, Plaintiff called Defendant NEMG and informed them that the bills should be sent to VA Long Beach healthcare system and paid by his VA insurance and his daughter's CHAMPVA insurance. Plaintiff informed Defendant NEMG that documents Plaintiff had received in the mail suggested that the VA and CHAMPVA had already processed the payment to Defendant NEMG for both Plaintiff's and Plaintiff's daughter's emergency room visits.

34. During this phone call, Defendant NEMG stated that the computer showed that it had not received payment, so Plaintiff was required to do something about it. Plaintiff mailed an Explanation of Benefits ("EOB") to Defendant NEMG via regular mail.

35. On or around January 9, 2019, Plaintiff received a bill from Defendant CMRE on behalf of Defendant NEMG, demanding payment for Plaintiff's February 2018 ER visit and Plaintiff's daughter's May 2018 ER visit.

36. Following receipt of the January 9, 2019, letter, in or around January 2019,

Plaintiff and his daughter again sent Defendants the EOBs dated June 18, 2018, and June 21, 2018, which showed the payments that CHAMPVA had made toward Plaintiff's daughter's May 2018 ER visit.

37. In or around January 2019, Plaintiff contacted HOAG Hospital regarding the collection efforts Defendant NEMG (on its own behalf and through Defendant CMRE) was making. Plaintiff was informed that HOAG Hospital and its service providers, including Defendant NEMG, bill for each of their services separately. Plaintiff was also informed that HOAG Hospital had been paid in full for both emergency room visits by VA Insurance (for Plaintiff's visit) and CHAMPVA (for Plaintiff's daughter's visit).

38. Also following receipt of the January 9, 2019 letter, in or around January 2019, the VA at Long Beach Healthcare System (on behalf of Plaintiff) sent Defendant NEMG a letter indicating that it's office had already paid Defendant NEMG for Plaintiff's February 2018, visit. Along with this letter, the VA (on behalf of Plaintiff) sent a document to Defendant NEMG called Veteran Payment History, showing that the Plaintiff's February 2018 ER visit was already paid for on April 12, 2018, and included additional details regarding the treasury check number and the relevant government regulation applicable to VA Healthcare payments to service providers.

39. In order to get the VA to send the letter and the payment history to Defendants, Plaintiff spent several days driving to and from the VA Long Beach campus thirty

miles from his home, finding the correct office, and speaking to the correct people to request such letters be sent regarding a debt that had already been paid.

40. On or around March 4, 2019, Plaintiff received another letter from Defendant CMRE on behalf of Defendant NEMG, demanding again that Plaintiff pay for his February 2018 ER visit.

41. Defendant NEMG told Plaintiff on at least one occasion that because their computer system was not showing that the payment had been made, that he, as the patient, was responsible for making that payment.

42. Plaintiff then provided Defendant NEMG with proof that the debt(s) had been paid, and instead of ceasing collection on an already paid debt, Defendants continue to insist that Plaintiff pay them money.

## ACTUAL DAMAGES

43. Plaintiff has suffered actual damages as a result of these illegal collection and intimidation tactics by this Defendant in the form of, pecuniary loss, invasion of privacy, personal embarrassment, loss of personal reputation, loss of productive time, nausea, and feelings of fear, anxiety, hopelessness, anger, persecution, emotional distress, frustration, upset, humiliation, and embarrassment, amongst other negative emotions.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF

## COUNT I

## VIOLATION OF § 1692E OF THE FDCPA

**AGAINST DEFENDANT CMRE ONLY**

44. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

45. A debt collector violates § 1692e of the FDCPA when it uses any false, deceptive, or misleading representation or means in connection with the collection of any debt.

46. Defendant CMRE violated § 1692e when it, among other qualifying actions and omissions, willfully misrepresented the legal status of the debt, to wit: that Plaintiff owed the debt despite having been informed that Plaintiff's insurance, through the VA, had already paid the debt.

47. Defendant CMRE violated § 1692e when it, among other qualifying actions and omissions, willfully threatened and continued to take action that could not legally be taken, to wit: this debt is not legally collectable from the Plaintiff pursuant to 38 C.F.R. §17.56(c) and 1755(g), because the debt was already paid by Plaintiff's insurance through the VA.

**COUNT II**

**VIOLATION OF § 1692F OF THE FDCPA**

**AGAINST DEFENDANT CMRE ONLY**

48. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

49. A debt collector violates § 1692f of the FDCPA when it uses unfair or

unconscionable means to collect or attempt to collect any debt.

50. Defendant violated § 1692f when it, among other qualifying actions and omissions, willfully and without justification, continued to attempt to collect the subject debt from Plaintiff, in violation of 38 C.F.R. §17.56(c) and 1755(g), despite being aware that Plaintiff's insurance through the VA had already paid the subject debt.

## COUNT III

### VIOLATION OF § 1788.17 OF THE RFDCPA

### AGAINST ALL DEFENDANTS

51. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

52. A defendant violates § 1788.17 of the RFDCPA when it fails to comply with the provisions of 15 U.S.C. § 1692b to 1692j, inclusive.

53. Defendant CMRE violated § 1788.17 of the RFDCPA when they willfully engaged in conduct, the natural consequence of which the violation of 15 U.S.C. § 1692e and § 1692f, as stated above.

54. Defendant NEMG violated § 1692d when it, among other qualifying actions and omissions, harassed, oppressed, and abused Plaintiff by sending the subject debt to collections in violation of 38 C.F.R. §17.56(c) and 1755(g), despite being aware that Plaintiff's insurance through the VA had already paid the subject debt.

55. Defendant NEMG violated § 1692e when it, among other qualifying actions and

omissions, used false, deceptive and/or misleading representations in order to collect or attempt to collect the subject debt, to wit: that Plaintiff still owed the subject debt, despite being aware that Plaintiff's insurance through the VA had already paid the subject debt – which is a violation of 38 C.F.R. §17.56(c) and 1755(g).

56. Defendant NEMG violated § 1692f when it, among other qualifying actions and omissions, used unfair and unconscionable means to collect the subject debt, by sending the subject debt to collections in violation of 38 C.F.R. §17.56(c) and 1755(g), despite being aware that Plaintiff's insurance through the VA had already paid the subject debt

57. Defendant NEMG violated § 1692g when it, among other qualifying actions and omissions, willfully and without justification, failed within five days of initially contacting Plaintiff to send him the notices required by § 1692g(a).

## COUNT IV

## VIOLATION OF § 1812.700 OF THE RFDCPA

## AGAINST DEFENDANT NEMG

58. Plaintiff in corporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

59. A debt collector violates §1812.700 of the RFDCPA when it fails to provide the notice contained in this section to an alleged debtor along with the first written notice initially addressed to a California address of the alleged debtor in

connection with collecting the debt by a third-party debt collector.

60. Defendant NEMG violated §1812.700 of the RFDCPA when it did not provide the written notice required in this section to Plaintiff with the first written collection effort addressed to Plaintiff's California address, which was sent in or around July 2018.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays that judgment be entered against each Defendant for:

a) Award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) (FDCPA) and pursuant to Cal. Civ. Code § 1788.30 (RFDCPA), against each Defendant and for Plaintiff, and,

b) Award of statutory damages in the amount of $1000.00 pursuant to 15 U.S.C. § 1692k(a)(1) (FDCPA) against each Defendant and for Plaintiff, and,

c) Award of statutory damages in the amount of $1000.00 pursuant to Cal. Civ. Code § 1788.30 (RFDCPA) against each Defendant and for Plaintiff, and,

d) Award of Treble damages pursuant to Cal Civ §3345 against each Defendant and for Plaintiff, and

e) Award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(1) (FDCPA) and pursuant to Cal. Civ. Code § 1788.30 (RFDCPA), against each Defendant and for Plaintiff, and,

f) Award to Plaintiff of such other and further relief as may be just and proper.

### TRIAL BY JURY IS DEMANDED.

61. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

DATED: May 31, 2019

**THE CARDOZA LAW CORPORATION**

BY: /s/ LAUREN B. VEGGIAN
MICHAEL F. CARDOZA, ESQ.
LAUREN B. VEGGIAN, ESQ.
ATTORNEY FOR PLAINTIFF,
BENJAMIN YU